**UNITED STATES of America**

v.

**Leon PITTMAN and Rosemary Patricia Engleman.**

**Crim. No. 74-027.**

United States District Court,
W. D. Pennsylvania.

March 26, 1974.

Charles F. Scarlata, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Morris F. Cohen, Pittsburgh, Pa., for defendants.

### OPINION AND ORDER

MARSH, Chief Judge.

The defendants, Leon Pittman and Rosemary Patricia Engleman, charged in a one-count indictment with unlawfully possessing 7.40 grams of heroin with the intent to distribute it, 21 U.S.C. § 841(a)(1), and aiding and abetting, 18 U.S.C. § 2, have moved to suppress evidence seized by the officers at the time of their warrantless arrests on December 11, 1973. An evidentiary hearing was held. It appears that the defendants contend that their arrests were illegal because not based upon probable cause, and, therefore, the subsequent search of their persons was illegal, and the seized evidence should be suppressed. While the question is not free from

doubt, in our opinion the motion should be denied.

At approximately 8:50 o'clock p. m., on December 11, 1973, Detective Sergeant Edward Costanzo, a nine-year veteran detective in the field of narcotics enforcement,[1] along with five agents of the Federal Drug Enforcement Administration and two local detectives, began a surveillance of "Big Dave's Bar"[2] located in the Hill District in the City of Pittsburgh. This surveillance was based upon information received from the Federal Drug Enforcement Administration (D.E.A.), a presumptively reliable source,[3] that "Big Dave's" was being used on that day as a narcotics distribution point by two unknown individuals. The source of the D.E.A.'s information concerning "Big Dave's" being used as a distribution center on that day was not challenged at the hearing. The Sergeant testified that the area around "Big Dave's" had been a notorious rendezvous point for narcotics dealers, including Pittman, "where all the drug traffic took place" (Tr., p. 6).

Sergeant Costanzo's surveillance post was in his car parked across the street from "Big Dave's". At approximately 9:00 o'clock p. m., the defendants pulled up in a car driven by Pittman, parked directly in front of Sergeant Costanzo's car, exited their car, and began to cross the street in the direction of "Big Dave's". While they were crossing the street Sergeant Costanzo observed Pittman hand an amount of currency to Engleman. The two defendants then split up, with Pittman going to a nearby jitney station[4] and Engleman entering "Big Dave's". After approximately one minute Engleman emerged from "Big Dave's", went directly to the jitney station, entered, and, shortly thereafter, both defendants left the jitney station, returned to their car and drove off.

Detective Costanzo recognized Pittman, whom he had known for six or seven years. He knew Pittman had been convicted of a federal narcotic violation in 1965, and upon information received from numerous informants over a period of six or seven years, was aware that Pittman had a reputation of being a narcotics dealer and a former user. Furthermore, within two days to a week before December 11, 1973, Sergeant Costanzo had received information from two separate reliable informants, who had previously given information resulting in 15 to 20 arrests and convictions, to the effect that Pittman was actively engaged in holding and distributing narcotics.

Based on the above facts and after seeing Pittman give money to Engleman, he concluded that the former had purchased narcotics via an intermediary (Engleman) from the unknown distributors in "Big Dave's Bar". Thus, when the defendants drove away, Sergeant Costanzo followed them a short distance, stopped their car, arrested both for violation of the narcotics laws and, in searching them incident to their arrests, found 16 packets, each containing a half-spoon dose of heroin, on Pittman.

■ We believe Pittman's arrest and search were valid. The information received by Sergeant Costanzo from two separate reliable informants and from the D.E.A., while not revealing the basis

1. Sergeant Costanzo is presently with the newly-formed Allegheny County Regional Narcotics Task Force and had previously been with the Allegheny County Narcotics Squad from 1964 to 1973.

2. "Big Dave's Bar" was also known as the "88" Bar, Art's Bar, and the Ambassador.

3. United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Brooks v. United States, 416 F.2d 1044, 1049 (5th Cir. 1969).

4. Jitneys are private vehicles which carry passengers for a fare in the City of Pittsburgh. The jitney station was on the same side of the street as "Big Dave's" and two doors away. Both defendants arrived in a car driven by Pittman and left the same way. Obviously, since Pittman, the driver, passed money to Engleman, the passenger, it would not be reasonable to presume that Pittman was merely a jitney driver dropping off a fare and returning to the station.

for the informants' conclusions was to some degree corroborated by his own knowledge of Pittman's past reputation and conviction as a trafficker in narcotics. Moreover, before Sergeant Costanzo arrested Pittman he had observed him near a known rendezvous point for narcotics distribution, had seen him pass money to Engleman who then went into the distribution point to apparently purchase something for Pittman while he waited a safe distance away at the jitney station, and had observed both defendants leave the vicinity shortly after Engleman had completed her business in "Big Dave's". The conduct of Pittman and Engleman centering around "Big Dave's" was sufficiently suspicious and unusual[5] that, when added to the information from Sergeant Costanzo's reliable confidential sources, the information from the D.E.A., and his personal knowledge about Pittman, and considering the information from all these independent sources together, Sergeant Costanzo had adequate probable cause on which to arrest Pittman and Engleman. United States v. Lampkin, 464 F.2d 1093 (3d Cir. 1972). *Cf.* United States v. Moody, 485 F.2d 531 (3d Cir. 1973), citing United States v. McNally, 473 F.2d 934, 939–940 (3d Cir. 1973); Bailey v. United States, 386 F.2d 1, 2 (5th Cir. 1967). We believe that what was said in United States v. McNally, *supra,* 473 F.2d p. 943, is equally applicable here:

> "To require suppression in this case would be to deny common sense and shift the fulcrum of the scale in favor of one offender and against society. Such a shift, though in the short run perhaps a defeat of authority, would be no gain for liberty."

■ The original arrest of Pittman being valid, there is no question that the subsequent search was likewise valid. United States v. Robinson, 414 U.S. 218,

94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

An appropriate order will be entered.

---

5. It is well known that intermediaries are extensively used in the pickup and delivery of narcotics so that the real purchaser can maintain a low silhouette. The conduct of the defendants outside of "Big Dave's" could aptly be categorized as a classic narcotics pickup.