LeRoy **HUNNICUTT**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 2051.

Supreme Court of Alaska.

Nov. 15, 1974.

Herbert D. Soll, Public Defender, Ben Esch, Asst. Public Defender, Anchorage, for appellant.

Norman C. Gorsuch, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

ERWIN, Justice.

Appellant, LeRoy Hunnicutt, appeals from an order of the superior court revoking his probation.

On August 2, 1972, appellant pleaded guilty to the offense of possession of a narcotic drug in violation of AS 17.10.010. On August 14 he received a suspended sentence of three years subject to the usual general conditions imposed upon probationers.[1]

On June 5, 1973, a petition to revoke appellant's probation was filed in the superior court. The petition contained two counts. The first count charged a violation of condition 9 of appellant's probation based upon an incident on May 26, 1973, during which appellant was found to be in possession of a hypodermic needle and a spoon containing a heroin residue. The second count charged appellant with failure to secure his probation officer's permission to return from Kodiak to Anchorage on May 26, 1973, in violation of condition 2 of his probation.

A probation revocation hearing was held on July 31, 1973. Testimony at the hearing revealed that on May 8, 1973, appellant sought permission from his Anchorage probation officer to travel to Kodiak to secure employment at a local cannery. Permission was granted and appellant's case was transferred to Kodiak. Upon arriving in Kodiak appellant reported to the Kodiak probation officer as directed. He was instructed that he was to change neither his residence nor his employment without first obtaining prior written permission.

On May 25 appellant abruptly quit his job in Kodiak and returned to Anchorage by plane. Prior to departing he made no

---

1. Three of the general conditions were:

    2. Secure the prior written permission of a probation officer of the Division of Corrections before changing employment or residence, or leaving the region of residence, or leaving the region of residence to which assigned.

    .    .    .    .    .    .

    6. Make proper effort to secure and maintain steady employment. If unemployed, notify a probation officer of the Division of Corrections at once.

    .    .    .    .    .    .

    9. Comply with all municipal, state and federal laws and ordinances.

attempt to either notify his probation officer that he had become unemployed or seek his permission to leave Kodiak. Following his arrival in Anchorage, appellant and his wife had dinner at the home of Jack Rickey and his wife, who is the sister of appellant's wife. After dinner appellant and Jack went to play pool at the Cinema I theater on west Fourth Avenue.

Later that evening, while routinely checking the Cinema I, patrolman Lawrence Goldstein recognized appellant as being "familiar,"[2] so he asked him to produce some identification. Appellant replied that he had none, but did give his name upon request. At this point Goldstein and his partner, auxiliary officer John Krieger, returned to their patrol vehicle and called the dispatcher at the police station. The dispatcher informed them that there was an outstanding bench warrant for appellant's arrest, but apparently gave them no further details.[3]

Goldstein and Krieger then returned to the Cinema I and advised appellant that he was under arrest for the bench warrant. Goldstein performed a "pat down" search for weapons. However, he apparently did not do a thorough check because a crowd had gathered and he feared a disturbance. Appellant was then taken to the police station in the patrol vehicle.

Upon arriving at the station, appellant was taken directly to an interview room by the patrolmen and ordered to empty his pockets. Goldstein then proceeded to search appellant's pockets. Feeling "something" in his coat pocket, Goldstein reached in and extracted a hypodermic needle and a spoon with a caked-on residue, which was later discovered to contain heroin. Appellant immediately volunteered that he was holding the needle for a friend and that the residue on the spoon was left over from dinner.[4]

Leaving Krieger in the room to watch appellant, Goldstein went to the dispatcher's office to obtain a copy of the arrest warrant.[5] After securing the warrant, Goldstein proceeded to the front counter and informed Rickey, who was waiting to bail out appellant,[6] as to the amount of the bail for the traffic offense. He also notified Rickey that a felony charge arising out of the search at the station would probably be filed against appellant; consequently, appellant could not be released until bail was set on the latter charge.[7]

2. Patrolman Goldstein testified that he had become acquainted with appellant through his past "criminal activities," including an "armed robbery" and various "family disturbances."

3. See note 4 *infra*.

4. Up to this point, appellant had been given no *Miranda* warnings, apparently because the arresting officers had made no attempt to interrogate him.

5. It is not clear from the testimony whether Goldstein knew at the time of the arrest that the warrant was for a minor traffic offense. However, this may be reasonably inferred from his responses to questioning concerning police procedures for arrests on traffic warrants. Also, Rickey testified that at the time of his arrest appellant informed those present that the warrant was for "traffic tickets."

6. Immediately following the search at the Cinema I, Rickey asked the patrolmen if he could bail out appellant and, if so, what the amount of the bail would be. Goldstein replied that he could but would have to go to the police station to learn the amount.

7. Rickey testified to the contrary in several material respects regarding his efforts to bail appellant out of jail. According to Rickey, following appellant's arrest, he picked up appellant's wife at a nearby cafe and drove to the police station. They arrived at the police station before appellant and the patrolmen; the patrolmen parked their vehicle beside his car; and they walked into the station just ahead of appellant and the patrolmen. Once inside, Rickey claimed, the patrolmen took appellant directly to the interrogation room while he spoke with a Lieutenant Duley concerning the amount of the bail. According to Rickey, Duley indicated that appellant could be bailed out as soon as he was booked, but declined to state the amount of the bail until the arresting officers could check on it. We note, however, that neither appellant's wife nor Duley appeared as a witness at the hearing in support of Rickey's recollection of the events at the police station, and that the court below necessarily resolved the facts in favor of Goldstein's version of the events that transpired at the station.

When questioned on direct examination about usual police procedures for executing traffic warrants, Goldstein replied that it was common to immediately place the suspect in an interview room and search him.[8] Furthermore, he retorted, in this particular case a second weapons search at the police station was necessary for the patrolmen's protection because the first search at the scene of the arrest had been of limited intensity due to the gathering crowd.

Goldstein also testified that he was concerned with appellant's safety. According to him, the police "have had people split their wrists in interview rooms" as an emotional reaction to being taken into custody, and police procedures stipulate that no suspect is to be left alone in an interview room without a prior weapons check. When Goldstein was reminded that the arrest was for only a minor traffic offense and that Krieger had remained in the room to watch the suspect, he simply replied: "[H]e could have watched him slit his wrists too."

Appellant's attorney made a timely motion to suppress the evidence of the needle and spoon. The written papers supporting the motion asserted the search was illegal based on the grounds (1) that the search was a pretext search,[9] and (2) that the search was impermissibly broad under McCoy v. State, 491 P.2d 127, 139 (Alaska 1972). The oral argument was based solely on the idea of a pretext search. The motion was denied. He also moved to suppress appellant's statement regarding the needle and spoon on the ground that no Miranda warnings had been given. This motion was also denied.

The court found that appellant's unlawful possession of the needle and spoon constituted a violation of condition 9 of his probation, which required that he

"[c]omply with all municipal, state and federal laws and ordinances." The court also found that appellant's failure to promptly notify his Kodiak probation officer that he had quit his job in Kodiak constituted a violation of condition 6 of his probation, which required him to notify his probation officer as soon as he became unemployed.[10]

Appellant's attorney objected in particular to the finding concerning condition 6 on the ground that the probation revocation petition contained no notice that a violation of this particular condition was being charged. In reply the court stated:

When a hearing for revocation of suspensions under a petition is had, any grounds that may show up which may indicate a violation of probationary terms can be utilized in the discretion of the court to revoke that suspension.

Appellant's probation was then revoked and he was ordered to serve the balance of the three-year sentence imposed on August 14, 1972. Appellant thereupon proceeded to file a timely notice of appeal to this court. He has expressly abandoned his earlier claim of a "pretext search" and concedes that the arrest was valid and that the search, while not made at the scene of the arrest, was not too remote from the arrest in terms of time or space. He has also abandoned his earlier objection to the lack of Miranda warnings.

Appellant argues three basic points on this appeal: (1) The trial trial court erred in refusing to suppress the items seized from him during the search in the interrogation room, because (a) an evidentiary search incident to a mere traffic arrest is impermissible and (b) the interrogation room search exceeded the permissible scope of a weapons search incident to the arrest. Appellant urges that the rule authorizing a

---

8. On cross-examination, however, Goldstein stated that under normal police procedure a defendant can avoid the booking process provided he can immediately pay bail at the police station. But he also testified that arrestees with "more serious criminal records" are commonly brought back to an interview room rather than being left at the front counter.

9. Appellant's attorney relied upon Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961) (appeal from D. Alaska).

10. See note 1 supra.

full search incident to any valid traffic arrest, adopted by the United States Supreme Court in United States v. Robinson [11] and Gustafson v. Florida [12] violates article I, section 14 of the Alaska Constitution.[13] (2) Assuming that the interrogation room search was illegal, the exclusionary rule should have been applied to bar consideration of the illegally seized evidence at appellant's probation revocation hearing. (3) The finding of a violation of condition 6 of appellant's probation at the revocation hearing without prior notification that a violation of this condition had been charged constituted a denial of procedural due process.

We, however, are unable to rule on the claims of error concerning illegal search and seizure, for we note that the trial court did not consider these particular legal arguments. We thus agree with the position advanced by the state in its brief [14] that this case must be remanded for further consideration in the trial court to resolve the alternate claims made by appellant.

Since a remand is necessary, the question concerning notice of violation of conditions of probation must be considered in light of the opinion of Martin v. State, 517 P.2d 1399, 1402 (Alaska 1974), which was decided after the date of the initial hearing herein.

Remanded for further proceedings.[15]

---

11. 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In summing up the *Robinson* rule, the court stated:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

414 U.S. at 235, 94 S.Ct. at 477, 38 L.Ed.2d at 440–441.

12. 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

13. Alaska Const. art. I, § 14, provides:

> The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Appellant presumably is relying upon Baker v. City of Fairbanks, 471 P.2d 386, 402 (Alaska 1970), in which this court noted that in interpreting the Alaska Constitution we are not bound by other courts' interpretations of federal constitutional provisions concurrently found in the Alaska Constitution, but rather are free to develop and expound upon our own interpretations of these provisions.

14. Appellee's brief at 20.

15. Nothing herein precludes such further hearings and the taking of evidence as the court decides are necessary.