Rabin, J.
(concurring). On this appeal, the defendant Troiano contends that no search of the person is authorized as *479 incident to an arrest for a traffic violation and that the revolver found on his person should have been suppressed. I would sustain the conviction on the ground that a proper custodial arrest for a traffic misdemeanor authorizes the arresting officer, to frisk the person of the arrestee as thoroughly as necessary to ascertain the presence of any weapon, and that any weapon found as the result of such a search is admissible.
It has recently been held by the United States Supreme Court that a full search of the person incident to any lawful custodial arrest “ is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘ reasonable ’ search under that Amendment.” (United States v. Robinson, 414 U. S. 218, 235.) Since there is no challenge in the present case to the propriety of taking the defendant into custody, it follows under the Robinson rationale that Troiano’s Federal constitutional rights were not violated. (Gustafson v. Florida, 414 U. S. 260.)
However, the defendant, relying on our prior decisions in People v. Marsh (20 N Y 2d 98) and People v. Adams (32 N Y 2d 451) argues that New York law requires a different result. I do not agree.
In Marsh (p. 100), a police officer executing an arrest warrant for a traffic infraction, speeding, searched the defendant and took from his pocket a book of matches. The arresting officer opened the match cover and found a sheet of paper which implicated Marsh in “ the playing of policy ”. His conviction for possession of a policy slip was reversed on appeal to this court on the ground that the incriminating paper was obtained unlawfully and that Marsh’s motion to suppress this evidence should have been granted.
The decision in Marsh was based on two independent grounds: (1) that the search violated the legislative intent that traffic infractions not be considered crimes; and (2) that the search involved exceeded the Federal and State constitutional limits on search and seizure (People v. Marsh, 20 N Y 2d 98, 100, 102). As noted above, the Federal constitutional underpinning of the Marsh holding has been eliminated by Robinson. Nevertheless, both the rationale based on legislative intent and that based on the State Constitution retain vitality. The search in Marsh was unlawful on both grounds. The classification of the offense *480 as a traffic “ infraction ”, as opposed to the “ crime ” categories of misdemeanor and felony (see Vehicle and Traffic Law, § 155), renders impermissible any search incident to arrest “ regardless of whether the arrest is made on the scene or pursuant to a warrant, unless the officer has reason to fear an assault or probable cause for believing,.that his prisoner has committed a crime.” (People v. Marsh, supra, at p. 102.) The warrant authorized Marsh’s arrest for speeding, a traffic infraction not a crime, and since there was no reason for the arresting officer to fear an assault, or probable cause to believe Marsh had committed a crime, no search for a weapon was authorized. (See, also, People v. Coleman, 24 N Y 2d 1005.)
Troiano was arrested on a misdemeanor violation of the Vehicle and Traffic Law and not for a mere infraction. Although the nature of the offense itself does not raise the likelihood of violence, the fact that it is in the misdemeanor category sep-. arates and distinguishes it from a very great number of traffic infractions committed by virtually everyone who ventures outdoors. While not unfailingly accurate, the dividing line between misdemeanors and infractions is clear and definite, and is a reasonable and practical approximation of a proper balance between the safety of the police and the privacy of the arrestee.
Even if the Marsh warrant authorized arrest for a traffic misdemeanor, however, the extent of the search conducted was improper. As Chief Judge Ftjld pointed out in Marsh, “ The search for weapons is a special exception to the proscription against warrantless searches, and it should not be extended beyond its purpose of securing the safety of the officer and preventing an escape.” (People v. Marsh, supra, at p. 101.) Had Marsh been taken into custody for a misdemeanor traffic offense, a frisk appropriate to the discovery of weapons would have been authorized. It is doubtful that this rationale would authorize the removal of the book of matches from Marsh’s pocket, and it is certain that a search for weapons supplies no reason for opening the match cover and seizing the paper enclosed within it. (See United States v. Robinson, 471 F. 2d 1082, 1110 [Bazelon, J., concurring], revd. 414 U. S. 218.) The search in the instant case is distinguishable from that in Marsh in that the extent of the search necessary to uncover the weapon was entirely consonant with its purpose of securing the officer’s *481 safety and preventing an escape. The arresting officer felt “ a hard object ” in the waistband of Troiano’s trousers and “ found it to be a revolver This placement of the weapon made it both accessible to the defendant while in custody, and discoverable upon a frisk of defendant by the arresting officer.*
A similar analysis distinguishes the recent ease of People v. Adams (32 N Y 2d 451); Defendant Adams was .stopped by a policeman for driving his car with the high-beam headlights shining. Following a routine inspection of his registration, Adams was taken into custodial arrest “ ‘ on the charge of altered identification number ’ a misdemeanor under section 422 of the Vehicle and Traffic Law. The arresting officer conducted a search of Adams’ person and a quantity of marijuana was discovered in his coat pocket. We held that the search was improper and the marijuana should have been suppressed.
Unlike Marsh, Adams was taken into custody for a traffic misdemeanor and a frisk for weapons was therefore authorized. It was not the classification of the. offense which rendered the search illegal, but rather the unauthorized extent of the search conducted. Accordingly, in our decision holding that the search of Adams was improper, it was “ carefully noted that it is not, and indeed could not be, contended that the search of defendant was a mere frisk ” (People v. Adams, 32 N Y 2d 451, 454). In Adams, the marijuana was discovered in the defendant’s coat pocket pursuant to a search which went beyond the type of intrusion necessary to discover weapons and prevent escape. There was no indication that the arresting officer was alerted, by a frisk or in any other way, that Adams’ pockets might contain a weapon or other dangerous instrument. In contrast, Troiano’s weapon was located in the waistband of his trousers, discoverable by frisking the defendant.
La each of the cases discussed above, and in the present case, we are faced with competing considerations which are *482 difficult to reconcile. Motorists, and others who commit relatively minor violations, do not thereby indicate any violence or iniquity, and retain a legitimate expectation that such a violation does not forfeit all their rights to security from warrantless searches and seizures that are unreasonable.
Shifting perspectives, however, it is also reasonable for the policeman who is charged With stopping and investigating such violations to be apprehensive, for his safety considering, that such situations account for a significant percentage of police shootings. (See United States v. Robinson, 414 U. S. 218, 234, n. 5; Bristow, Police Officer Shootings — A Factual Evaluation, 54 J. Crim. L. C. & P. S. 93 [1963], cited in United States v. Robinson, supra, p. 234, n. 5; Adams v. Williams, 407 U. S. 143, 148, n. 3; People v. Adams, 32 N Y 2d 451, 457, n. 2 [Jasen, J., dissenting], supra.) Furthermore, the probability of the traffic offender’s being armed is not the only factor to be considered. As the dissenting opinion in United States v. Robinson recognized, a crucial feature distinguishing the in-custody arrest, from noncustody situations “ ‘ is not the greater likelihood that a person taken into custody is armed, but rather the increased likelihood of danger to the officer if in fact the person is armed.’ ” (United States v. Robinson, supra, at p. 253 [Marshall, J., dissenting], original quote in People v. Superior Ct. of Los Angeles County, 7 Cal. 3d 186, 214).
A further consideration is the relative seriousness of a “ mistake ” or overemphasis of one of the competing considerations. If the police are unwisely authorized to conduct searches based on any traffic violation, the results will likely be that otherwise law-abiding and nondangerous persons will be subjected to the indignities of a search. There are also the dangers that the police may on occasion use the traffic offense merely as a pretext to conduct an otherwise illegal search, and that searches will be conducted selectively, based, for example, on factors such as social status. On the other hand, if the police are imprudently forbidden to conduct at least a search for weapons, there is the real possibility that physical injury, including death, may result to a police officer. Even ignoring factors which might be diminished by proper control, such as pretext and selectivity, the countervailing forces represent very strong interests of society. However, weighing the results, if an error *483 in balancing is to be made, I prefer it to be on the side of security to the police officer.
Viewing these considerations in the light of the legislative intent with regard to traffic infractions, I conclude that the State constitutional guarantee against unreasonable searches and seizures, as interpreted by prior case law, requires that: (1) an arrest based solely on a traffic infraction, will not, without more, authorize a frisk for weapons, whether the arrestee is taken into custody or not; (2) a proper custodial arrest for a traffic misdemeanor will authorize a police officer to conduct a frisk appropriate to the discovery of weapons; (3) if based solely upon a custodial arrest for a traffic misdemeanor for which a search for evidence is not appropriate, the extent of a search of the person incident to that arrest must initially be limited to a frisk of the body and clothing of the arrestee; and (4) if such a frisk reveals an object that might reasonably be thought to be a weapon, or if there is some other basis supporting a reasonable belief -that a weapon may be present, the officer may go beyond a frisk in order to ascertain whether weapons áre present. Applying these principles to the facts of this case, I find that the search was authorized by law and that the motion to suppress was properly denied.
Accordingly, I concur in the result and vote to affirm the order of the Appellate Division.
Judges Jasen, Jones and Stevens concur with Chief Judge Breitel ; Judge Rabin concurs in a separate opinion in which Judges. Gtabrielli and Waohtler concur.
Order affirmed.

 At the suppression hearing, the arresting officer testified that he conducted “ a frisk or search ” of the defendant. The precise extent of the search is not clear. However, the weapon in this case was found in the trouser waistband, and apparently discovered by frisking the defendant. Whether the officer also conducted a full search is therefore irrelevant in this case since the evidence sought to be suppressed was obtained by the frisk and not as a fruit of a full search.