N.R. SMITH, Circuit Judge,
dissenting:
The undisputed facts of this case establish that Officer Bonney’s search of Maddox’s key-chain container was a search of an arrestee’s person incident to a lawful custodial arrest — a search that needs no warrant to be valid under established Fourth Amendment law. See United States v. Robinson, 414 U.S. 218, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). I therefore dissent.
In review of the pertinent facts in this case, Maddox does not dispute that Officer Bonney had probable cause to arrest him. He does not dispute that Officer Bonney first took possession of Maddox’s keys when Officer Bonney removed those keys from Maddox’s hand as Officer Bonney was attempting to handcuff Maddox. He does not dispute Officer Bonney’s description of Maddox’s behavior upon being stopped; behavior that is best described as *1051 confrontational and aggressive.[1] Finally, Maddox does not dispute that, if we find the search of the key-chain container valid, the discovery of methamphetamine in that key-chain container justifies a warrantless search of Maddox’s truck under the “automobile exception.” See Carroll v. United States, 267 U.S. 132, 160-62, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Having found undisputed facts establishing the propriety of Officer Bonney’s search of the key-chain container, this panel need look no further for justification. See Gustafson v. Florida, 414 U.S. 260, 263-64, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) (holding that the lawful arrest renders the search of the arrestee’s person “reasonable” under the Fourth Amendment).
FACTS
Officer Bonney first noticed Maddox while Officer Bonney was parked on the west side of Barker Road in Spokane, Washington (Barker Road runs north-south), typing up some notes on a noise complaint call in the area. Officer Bonney’s vehicle was facing south and located just north of an intersection where Buckeye Avenue (Buckeye Avenue runs east-west) ends at Barker Road (forming a T-intersection). From that vantage point, Officer Bonney observed Maddox driving westward down Buckeye Avenue. As Officer Bonney watched, Maddox drove past a stop sign and then abruptly stopped (Bonney suspected that the truck’s driver was about to run the stop sign before seeing the police car), coming to a complete stop in the intersection, partially blocking northbound traffic on Barker Road. At this point, Officer Bonney pulled out to catch up with the truck. The truck then immediately reversed, almost backing into a small car traveling west behind the truck. The truck made a quick 3-point turnblocking traffic on Buckeye Avenue in both direetions-and quickly accelerated eastward. When Officer Bonney caught up, the truck slowed down to a crawl, and, at that point, Officer Bonney pulled the truck over.
When Officer Bonney exited his patrol car, Maddox also got out and began yelling at him — including yelling “Why the fuck you stopping me?” as well as other profanities. Officer Bonney informed Maddox that he had stopped Maddox for reckless driving and asked to see Maddox’s driver’s license. Maddox told him that he did not have a driver’s license. Officer Bonney then asked Maddox to whom the truck belonged, to which Maddox replied that a friend “gave” him the truck a few weeks earlier.[2] Maddox admitted that he had not registered the truck and that he had no bill of sale. Officer Bonney noticed that tabs on the truck were expired and that a temporary sticker in the rear window of the truck appeared to be invalid (Officer Bonney observed that the sticker was a photocopy — rather than the original — and that the dates on the sticker would have made the 30-day temporary sticker valid for 31-days even if it had been issued the day of the stop).
When Officer Bonney ran a computer check on Maddox, he discovered that Mad *1052 dox’s license had been suspended. He then walked back to the truck to place Maddox under arrest for reckless driving and driving while his license was suspended. Just before handcuffing Maddox, Officer Bonney removed a cell phone and key-chain from Maddox’s hands and set them on the driver’s seat. After walking Maddox back to the patrol car, Officer Bonney continued his search of Maddox’s person, finding $358 in Maddox’s pants pockets. Officer Bonney then secured Maddox in the back of the patrol car. After securing Maddox, Officer Bonney went to retrieve the items he had seized incident to arrest, which included the keychain. On the key-chain was a blue cylindrical container with a screw top. Upon removing that top, Officer Bonney found a white crystallized substance he recognized as methamphetamine.
ANALYSIS
An officer’s authority to search an arrestee’s person incident to arrest arises from the existence of a lawful custodial arrest. Robinson, 414 U.S. at 236, 94 S.Ct. 467. No one disputes the lawful custodial arrest here. We must only decide whether Officer Bonney’s search of the key chain container was too remote in time or place, to be justified as a search of an arrestee’s person incident to arrest. The majority holds this search invalid, finding that while the key chain container was within Maddox’s immediate control at the time of the arrest, events subsequent to the arrest but prior to the search rendered the search “unreasonable.” Maj. Op. 1048. The majority bases its finding of unreasonableness on the fact that, at the time Officer Bonney returned to further investigate the items seized in his search incident to arrest, “Maddox’s person was handcuffed in the back of the squad car, incapable of either destroying evidence or presenting any threat to the arresting officer.” Maj. Op. 1048. However, the majority cannot cite any authority for requiring such an instantaneous assessment of those items seized upon a search incident to arrest nor can it cite authority for such a case-specific review. Instead, contrary to the majority’s view, the Supreme Court has expressly instructed that we not engage in a “case-by-case adjudication” “of the reasons supporting the authority for a search of the person incident to a lawful arrest,” but that the “how and where” of the search should generally be left within the judgment of the police officer. Robinson, 414 U.S. at 235, 94 S.Ct. 467.[3] Here, there *1053 exist no unusual circumstances requiring this panel to step outside the general rule set forth in Robinson and question Officer Bonney’s judgment. Finally, the very case upon which the majority primarily relies, United States v. Turner, 926 F.2d 883 (9th Cir.1991), contradicts the majority view. There, we held that a search, conducted when the arrestee’s person was handcuffed and secured in a different room than that being searched, was still a valid search of an arrestee’s person incident to arrest.
1. Search of an Arrestee’s Person and the Chimel Justifications
“A police officer’s determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.” Robinson, 414 U.S. at 235, 94 S.Ct. 467. Thus, the Supreme Court instructed that an appellate panel’s review should not focus upon the “how and where” of the search. Nevertheless, both the Supreme Court and this Circuit have decided cases where they found the search too remote in time or place to be described as a search incident to arrest. See, e.g., United States v. Chadwick, 433 U.S. 1, 4-5, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (finding the search of a double-locked luggage chest that was not searched until an hour and a half after the arrests, having been transported to a federal building, was not a proper search incident to arrest), abrogated on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); Monclavo-Cruz, 662 F.2d at 1287 (finding warrantless search invalid where officers seized a purse incident to arrest, transported the purse to Immigration Office, and searched the purse about an hour after the arrest). Because Chadwick and Monclavo-Cruz present fact patterns where a search incident to arrest was found improper, I contrast the facts here with those cases. While the facts surrounding the searches in Chadwick and Monclavo-Cruz were much more extreme in time and location than the search here, the courts looked to (1) the time of the search relative to the arrest, and (2) the location of the search.
In sum, a reviewing panel must respect the inherent reasonableness of the officer’s search and the ad hoc nature in which that search is conducted, by declining to engage in a factbased review of the “how and where” of the search; yet a panel must guard against expanding presumed reasonableness to searches that clearly are not “incident to arrest.”
Looking to the manner, location, and time of Officer Bonney’s search of the key-chain container, the majority errs in finding the search should be included among those extreme cases where the search was found unreasonable. Officer Bonney took the key-chain container directly from Maddox’s hand at the exact time that he was arresting Maddox. He momentarily set the container in almost the exact location of the arrest-in order to handcuff Maddox. He then secured Maddox in the patrol car and directly returned to retrieve and assess the evidence found on Maddox’s person. At this point, Officer Bonney searched the container. Maddox presents no evidence that the arrest was protracted or that Officer Bonney did not return directly to the items seized during the search incident to arrest. Maddox provides no evidence that Officer Bonney moved the evidence away from the scene of arrest and seizure before conducting his search. Thus, the search occurred within a time of mere minutes and within an area of mere feet; far from the passage of hours or the transportation to another location that occurred in Chadwick and Monclavo-Cruz.
*1054 The majority also supports its view by arguing that the warrantless search of an arrestee’s person is an exception to the Fourth Amendment’s warrant requirement and, therefore, only valid if it can be justified either as an attempt to ensure police safety or preserve evidence. Maj. Op. 1048 (citing Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). This argument fails because, as the Supreme Court has explained, the validity of a search incident to arrest does not rely upon satisfaction of those justifications.[4] First, although the search of an arrestee’s person incident to arrest has been, at times, referred to as an “exception” to the Fourth Amendment’s warrant requirement, the Supreme Court has made clear that the search is not so much an exception to the warrant requirement, as it is reasonable by its nature. Gustafson, 414 U.S. at 263-64, 94 S.Ct. 488. Second, Chimel never “purported to limit the traditional authority of the arresting officer to conduct a full search of the person of an arrestee incident to a lawful custodial arrest.” Id. at 264, 94 S.Ct. 494; see also Robinson, 414 U.S. at 236, 94 S.Ct. 467 (“[I]t is the fact of custodial arrest which gives rise to the authority to search.”). Therefore, the majority’s reliance upon the necessity to demonstrate such justifications fails.
2. United States v. Turner
The majority relies upon Turner, where a search incident to arrest was found valid, in order to invalidate the search of Maddox. However, applying Turner to the facts here, it reinforces, rather than conflicts with, the Supreme Court’s precedent in Chadwick and the Ninth Circuit case of Monclavo-Cruz. For these reasons, I find the majority’s reliance upon Turner unconvincing.
Turner adopted a two-fold inquiry to aid a reviewing panel in determining whether a search was a valid search of an arrestee’s person incident to arrest. Turner, 926 F.2d at 887. Turner requires a reviewing panel first determine whether the searched item was “within the arrestee’s immediate control at the time he was arrested” and next determine whether the “events occurring after the arrest but before the search made the search unreasonable.” Id. First, there can be no dispute here that the key chain container was “within [Maddox’s] immediate control at the time he was arrested.” Neither party disputes that Maddox was arrested while at his car and that the keys were taken from Maddox’s hand at the very moment of arrest. Second, there exist no extraordinary events occurring between the arrest and the search rendering Officer Bonney’s further investigation of the seized item unreasonable.
*1055 A comparison of the facts in Turner also reveals the validity of Officer Bonney’s search. In Turner, we found the search incident to arrest valid, where the officers did not search baggies, found on the bed where the defendant had been arrested, until after the defendant was cuffed and secured in another room. 926 F.2d at 886, 888.[5] Those baggies were found to contain cocaine base. Id. The Turner opinion does not explain whether the baggies searched were clear or opaque; it does not tell us how the baggies were closed, how they were searched or the tools necessary to open the baggies. Id. Instead, Turner provides a cursory conclusion that the search was valid, because the panel could not say that the officers’ concerns for their own safety at the time of arrest “were unfounded.” Id. at 888. As discussed above, I also cannot find Officer Bonney’s actions unfounded given (1) the nature of Maddox’s erratic driving, (2) his immediate and aggressive confrontational behavior, and (3) the suspicious circumstances surrounding the vehicle, combined with Robinson’s instruction that reviewing courts refrain from unnecessarily second-guessing the officer’s judgment regarding the necessary actions to protect his safety, see 414 U.S. at 235, 94 S.Ct. 467. Furthermore, before looking to the two-fold inquiry, the panel in Turner reiterated this Circuit’s general principle for searches incident to arrest: “Such a search incident to arrest must be conducted at ‘about the same time as the arrest.’” Turner, 926 F.2d at 887 (quoting United States v. Andersson, 813 F.2d 1450, 1456 (9th Cir. 1987)). Here, Officer Bonney’s search of the key-chain container satisfies this standard, as it was “about the same time as the arrest.” Lastly, here the majority invalidates a search where an officer, without the aid of other officers, deems it necessary to secure a hostile and confrontational arrestee before immediately returning to those items taken directly from the arrestee’s hands during the arrest. Therefore, it seems unlikely that the majority, if presented with the facts of Turner, would find a search valid where a prepared team of officers arrested, secured, and moved the arrestee before searching the bed upon which he was found.
CONCLUSION
The parties do not dispute that the arrest of Maddox was a lawful custodial arrest. The parties do not dispute that the item searched was taken from Maddox’s hand at the exact moment he was arrested. The parties do not dispute that the item was not moved from the place of seizure and was searched within minutes of arrest. Therefore, I find that the search of Maddox’s key-chain container was a lawful search of an arrestee’s person incident to arrest. I dissent.

. Although Maddox's behavior is not dispositive when determining the validity of the search, I do find it particularly relevant to understanding the nature of the stop. In particular, Maddox’s confrontational and aggressive behavior forced a situation where Officer Bonney’s search of Maddox’s effects, while contemporaneous to the arrest, was not performed until Maddox was secured.

. The majority opinion characterizes Maddox’s statement that he owned the car as an "admission” of ownership. However, the record reflects that from Officer Bonney's perspective, rather than viewing Maddox's statement that a friend gave him the car as an “admi[ssion] of ownership,” it raised concerns as to the vehicle’s true owner.

. The majority seeks to avoid the Supreme Court’s clear instruction in Robinson, finding it "easily distinguishable" because of the difference in facts between Robinson and the case here. However, Robinson cannot be so easily cast aside, for two reasons. (1) In Robinson, the Supreme Court sought to determine the validity of a search of an arrestee’s person incident to arrest; here, we seek to answer that same issue. Further, Robinson does not limit its holding to its facts and, as the Supreme Court often does, the opinion explains the genesis, development, justifications, and limitations of a search of an arrestee’s person incident to arrest. That guidance simply cannot be ignored because of minor factual differences. (2) In this common law system, the facts here and those in the binding precedent of Robinson are simply not that different. In Robinson, the defendant was arrested for driving without a permit; Maddox was arrested for driving without a permit. In Robinson, the drugs were found inside of a container (a cigarette pack) taken from the defendant's person during the search; here, the drugs were found inside of a container (key chain container) taken from Maddox's person during the search. The difference exists in the timing of when the arresting officer further inspected that seized container. However, in the Robinson opinion, there exists no evidence that the defendant acted in an aggressive or hostile manner; here, there exists uncontroverted evidence that Maddox acted in an aggressive and hostile manner while being arrested. With such similarity, the Supreme Court's instruction in Robinson remains, at very least, highly instructive, and certainly should not be dismissed as "easily distinguishable.''

. In making such argument, I do not concede that the facts cannot rely upon the twin justifications of officer safety and preservation of evidence. In fact, the search of the key chain container can be supported by both justifications. Although the nature of the container does not diminish Maddox’s constitutional protections, Monclavo-Cruz, 662 F.2d at 1287, the fact that Maddox chose to attach the searched container to his keys supports the reasonableness of Officer Bonney’s search. Here, the item searched (a small cylinder with a screw cap) was attached to what amounts to a tool: the keys to Maddox's vehicle. Any person wishing to drive his truck, move his truck, lock or unlock his truck is required to use a set of keys. Officer Bonney himself would be required to use that same set of keys if he wished to move or secure Maddox’s truck upon arrest. I cannot agree with the conclusion that the justifications of officer safety and destruction of evidence— upon which the majority so heavily relies — do not further support the search of a small unlocked container attached to a tool which Officer Bonney would either be forced to use himself or to give to another person.

. The majority parses the location of the defendant to the searched item in much greater detail than that found in Turner. In Turner, the baggies were discovered in the same bed where Turner was arrested (not in his pocket or in his hands), and were not searched until after he was removed from the room and secured. Yet, the majority does not challenge that the search was a valid search of an arrestee’s person incident to arrest. Here, the key chain container was taken directly from Maddox's hand, but not searched until after he was removed from the area and secured in the patrol car. Yet, the majority states that, under such facts, the search could not possibly be described as a search of Maddox's person. Maj. Op. 1048-49.