**UNITED STATES of America, Plaintiff,**

v.

**Calvin BAINES and Walter Lee Jones, Defendants.**

**No. 74 CR 34–W–1.**

United States District Court, W. D. Missouri, W. D.

April 10, 1974.

Bert C. Hurn, U. S. Atty., Patrick E. Eldridge, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Robert G. Duncan, Duncan & Russell, Gladstone, Mo., for Jones.

Michael Lerner, Kansas City, Kan., for Baines.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This case pends on defendants' motion to suppress. The factual circumstances are established by the stipulation of facts filed March 28, 1974. We have considered all briefs filed both before and after the factual circumstances were settled by the stipulation of facts and conclude that the defendants' motion to suppress should be denied.

### II.

It is undisputed that Walker, a government informer, traveled with defendant Jones to California for the purpose of buying heroin. Defendant Baines drove Walker and Jones to the airport in Kansas City and agreed to pick them up when they returned from California. While in California, Walker observed Jones wrap heroin in toilet paper for transportation back to Kansas City. Walker did not know whether Jones would mail the heroin or take it with him on the airplane when he telephoned D.E.A. officials from California.

Walker's telephone call to D.E.A. officials from California occurred on January 30, 1974. He reported that he and Jones would arrive on TWA Flight #92 at 5:00 a. m. on the morning of January 31, 1974. Walker also advised the D.E.

A. people that before leaving California, he would attempt to find out whether Jones had the heroin on his person and, if so, would remove his hat and scratch his head upon disembarkment from the plane in Kansas City. When Walker and Jones arrived at the Kansas City airport, Walker gave the signal. Defendant Baines, in further corroboration of Walker's information, did indeed meet the plane. D.E.A. officers followed Baines and Jones to Baines' automobile. As the D.E.A. officers approached Baines' car, they observed Jones place his hand toward the floorboard of the automobile on the passenger side and then lock the passenger side door.

Both defendants were ordered out of the car and arrested. The automobile was then searched and heroin found on the floor, wrapped in toilet paper. Although not significantly relevant, it is stipulated that the heroin package could not have been seen from outside the car until the car door was opened. A search of the defendants' persons outside the car produced no contraband. However, $150 apparently was taken from Jones and $800 from Baines. Baines' money has been returned to him. Although defendants' motion to suppress does not mention the $150, defendants' suggestions indicate that defendant Jones seeks a return of that money, a matter we need not rule at the present time.

It is, of course, stipulated that the D.E.A. officials proceeded without either an arrest or a search warrant. The reason why no warrant was obtained is not relevant. The fact that the D.E.A. officials did not attempt to obtain a warrant is relevant only in that they did not in fact have a warrant.

### III.

Defendants, in their most recent suggestions, argue that the controlling case in this matter is Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), arguing that "a search incident to an arrest lies only for that area 'within his immediate control.'" More

appropriately defendants also argue that Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) is applicable to this case. The government in its original brief relied on Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In its most recent suggestions, however, the government cites Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as the leading case applicable to the case at bar.

The difficulty with the briefs filed by both sides is that appropriate recognition is not given to the fact that cases involving application of Fourth Amendment principles, in the final analysis, turn on the particular factual circumstances presented and that reliance upon broadly stated general principles is at best deceptive. The question presented under the undisputed particular facts of this case is whether or not the warrantless automobile search is valid. This case does not involve any search of a defendant's person and discussion of such cases is not appropriate. Under the rationale of current recent Supreme Court cases, this case does not involve any question in regard to whether the search may be justified as an incident of the defendants' arrest. Under those cases, the factual question presented is whether the D.E.A. officers had probable cause both to make a warrantless arrest and a warrantless search of the automobile.

It is completely unrealistic to attempt properly to rule a Fourth Amendment case without giving careful consideration to the rationale of recent Supreme Court cases. In something of an understatement, Mr. Justice Rehnquist recently commented in Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973), that while general Fourth Amendment principles may be easily stated "the decisions of this Court dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web."

*Cady* purported to accept the principle that, except in certain carefully defined classes of cases, a search was "unreasonable" within the meaning of the Fourth Amendment unless authorized by a valid search warrant. *Cady*, however, over the usual vigorous dissent which typifies Fourth Amendment cases, concluded that "one class of cases which constitute at least a partial exception to this general rule is automobile searches."

Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970), was quoted by *Cady* to support a required recognition that "there is a constitutional difference between houses and cars." Chambers v. Maroney, which did involve an automobile search, like Chimel v. California, which involved a person's search, at least served the function of simplifying the task of lower federal courts in ruling Fourth Amendment cases. Until *Chimel* was decided, for example, lower federal courts had great difficulty in knowing whether United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, could be safely followed in a Fourth Amendment case. *Chimel*, consistent with critical commentary of many years standing, concluded that both *Rabinowitz* and *Harris* should no longer be followed by the lower federal courts.

Chambers v. Maroney, on the other hand, dealt with Carroll v. United States, *supra*, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), which reaffirmed and followed *Carroll*. Both *Carroll* and *Brinegar* were subject to the same sort of critical commentary over the years and those two cases gave lower federal courts the same sort of difficulties which they encountered in attempting to apply the rationale of *Rabinowitz* and *Harris*. Chambers v. Maroney definitely concluded, however, that *Carroll* and *Brinegar* did have continuing vitality and that those decisions were not to be considered as inconsistent with the rationale of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L. Ed.2d 538 (1968); and certainly the rationale of Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), which upheld a warrantless search of an automobile held for forfeiture under state law. Chambers v. Maroney expressly held in footnote 8 on page 50 of 399 U.S., page 1980 of 90 S.Ct. that "nothing said last term in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), purported to modify or affect the rationale of *Carroll*."

Under the factual circumstances of *Chambers*, it is clear that the defendant's automobile was in fact searched without a warrant after the defendants had been arrested and after the automobile had been taken to a police station following the defendants' arrest. *Chambers*, in affirming the validity of the search, proceeded upon the rationale that "the search that produced the incriminating evidence was made at the police station some time after the arrest and could not be justified as a search incident to an arrest." *Preston*, which involved almost identical factual circumstances, was distinguished on the ground that in *Preston*, "the officers had no cause to believe that evidence of a crime was concealed in the auto." The warrantless search was sustained in *Chambers* because under the particular factual circumstances "there was probable cause to arrest the occupants of the station wagon that the officer stopped; just as obviously was there probable cause to search the car for guns and stolen money."

*Chambers*, accordingly concluded that *Carroll* was properly decided on its facts because under the factual circumstances of *Carroll* there was "probable cause to believe that the car contained articles that the officers are entitled to seize." *Chambers* recognized and expressly approved *Carroll's* rationale that "the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an

arrest." Based upon the "constitutional difference between houses and cars," *Chambers* approved the search involved in that case because, under the particular factual circumstances presented, the officers had probable cause to make the search. *Chambers,* over the vigorous dissent of Mr. Justice Harlan, concluded that:

For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. *Given probable cause to search, either course is reasonable under the Fourth Amendment.* [Emphasis ours]

In addition to *Cady,* above mentioned, there have been at least two other automobile search cases since *Chambers* was decided in 1970. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), concluded that under the factual circumstances, the rationale of the question of the contraband automobile exception, exemplified by *Carroll,* which *Chambers* held was viable, could not be stretched to justify the warrantless search under the facts involved in that case. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), on the other hand, concluded on the facts there involved that information received by the arresting officer from an informant that the defendant had a gun in his waistband and heroin hidden in his car could be reasonably relied upon to justify the defendant's arrest and subsequent search of his automobile. In *Adams,* the arresting officer, armed with an informant's tip, reached through the car window, located and seized the theretofore invisible gun in defendant's waistband, and thereupon arrested the defendant for unlawful possession of a pistol. A subsequent search of the car enabled the officers to find "substantial quantities of heroin . . . in the car." On those facts, the Court reversed the Second Circuit which had suppressed the evidence and

concluded that because "the arrest on the weapons charge was supported by probable cause . . . the search . . . of the car incident to that arrest was lawful." The rationale of *Brinegar* and *Carroll,* as defined in *Maroney,* was applied. The Court, with a loose reference to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959), (which involved a person's, rather than an automobile search) concluded that because "the policeman found Williams in possession of a gun in precisely the place predicted by the informant," such circumstance tended to corroborate the reliability of the informant's further report of narcotics and that probable cause for the search therefore existed and justified the warrantless search.

Although the dissenting opinion in *Adams* suggested that the majority opinion in that case "marks a departure from the mainstream of our Fourth Amendment cases," it is clear that we must follow the rationale of Chambers v. Maroney as applied by the majority in *Adams,* and apply that rationale to the undisputed factual circumstances of this case.

We accordingly find and conclude under the undisputed factual circumstances that Walker, the informer, gained the confidence of both defendants and that the information he relayed to the D.E.A. officers, both before he went to California and while there, could reasonably be relied upon by those officers in light of the manner his information was corroborated by later circumstances. There is no question in our mind that probable cause therefore existed for the officers to arrest the defendants. In light of the signal given by Walker, when considered together with the action of defendant Jones which disclosed that he apparently was attempting to hide something as the officers approached the car, we find and conclude that probable cause existed for the officers to make the search of the automobile for contraband. Under the rationale of *Chambers,* and its progeny, we therefore find and conclude that the

existence of probable cause justified the warrantless search of the automobile and that defendants' motion should be denied.

For the reasons stated, it is

Ordered that defendants' motion to suppress should be and the same is hereby denied.