**UNITED STATES of America,**
**Plaintiff,**

v.

**James M. CALOVICH and Wayne Jones,**
**Defendants.**

**No. 74 CR 25–SJ.**

United States District Court,
W. D. Missouri,
St. Joseph Division.

March 18, 1975.

Bert C. Hurn, U. S. Atty., Kansas City, Mo., James C. England, Asst. U. S. Atty., for plaintiff.

Daniel Matula, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This case pends on defendants' motion to suppress illegally seized evidence, in this instance the controlled substance stipulated to be marihuana, which defendants allegedly possessed with intent to distribute in violation of § 841(a)(1), Title 21, United States Code, and § 2, Title 18, United States Code. At a pretrial conference with counsel, the Court reviewed the contemporaneously prepared police reports of the Kansas City, Missouri Police Department and a subsequently prepared federal Drug Enforcement Administration Report of Investigation which set forth the circumstances under which members of the Kansas City Police Department made their warrantless arrest of the defendants and their subsequent seizure of marihuana after a warrantless search of the car trunk of a 1963 Chevrolet which defendants had driven to Kansas City Airport on April 6, 1974. The parties agreed at the conference with the Court to submit the pending motion on a stipulation of facts which has now been filed of record.

It is stipulated that around 9:00 o'clock a. m. on April 6, 1974, a member of the Kansas City, Kansas Police Department received an anonymous telephone tip that two persons, identified as "hippy-type individuals" would meet another person who would arrive that day at the Kansas City International Airport on Braniff Flight 400 at 9:45 a. m. and be carrying a quantity of "dope" with him on the plane.[1] The still unidentified tipster stated that the two persons would arrive at the airport in a 1963 Chevrolet bearing a Kansas license number WYJ, with remaining numbers unknown. It may be permissibly inferred that the Kansas City, Kansas Police Department relayed the anonymous tip to the Kansas City, Missouri Police Department in light of the fact that a Sergeant, two Investigators and a Detective of the latter department all proceeded to the airport.

Those officers observed a 1963 Chevrolet with Kansas license number WYJ 5116 parked near Braniff Gate 7.[2] Two men, later identified as the defendants, and one woman were in the car. The police officers observed the woman as she met a passenger on Braniff Flight 146 from Dallas. She accompanied the deplaning passenger who claimed a brown and a green suitcase at the baggage counter. The passenger also had a white overnight bag, which he had carried with him on the plane. The man and the woman took all three pieces of baggage to the 1963 Chevrolet in a parking lot; the three suitcases were immediately put in the trunk of the car; and the four individuals got in the Chevrolet and drove to the toll booth.

At this point, the Kansas City, Missouri Detective approached the car, identified himself as a police officer, and or-

---

1. The Kansas City, Missouri Police Department report reveals that the anonymous telephone call relayed from Kansas City, Kansas Police Department actually named both defendants who would be at the airport and also named the individual who would arrive on the plane. That report, however, stated only that the individual on the plane "would be carrying some 'dope' with him." The report of the investigation written up for use by the federal Drug Enforcement Administration expanded on the language contained in the contemporaneously written report of the Kansas City Police Department and stated that the individual "would be carrying a quantity of 'dope' *for JONES and CALOVICH*." The language added in

the DEA report does not add any significant factual circumstance to the determination of this case.

2. Both the Kansas City Police Department report and the DEA report reveal that as soon as the police officers saw the license number they made a radio check and determined that the 1963 Chevrolet was registered to Brenda Jones, 244 Orchard Street, Kansas City, Kansas. Defendant Wayne K. Jones, of course, lived at 244 Orchard Street, Kansas City, Kansas. Under the circumstances, probable cause for arresting someone for driving a stolen vehicle was not present.

dered all passengers out of the vehicle.[3] It is stipulated that "as one of the original passengers [referring to one of the defendants] got out of the car, Police Sergeant Doolan observed him drop two plastic bags." It is then stipulated that all four individuals were immediately placed under formal arrest.

It is stipulated that after the arrest Detective O'Donnell opened the trunk, then opened the green suitcase and observed packages which had a strong odor of marihuana. The packages were opened and the marihuana was seized.

## II.

The point of beginning in all search and seizure cases requires recognition that the Fourth Amendment's prohibition against "unreasonable search and seizures" is directly associated with the warrant clause contained in that Amendment and that, accordingly, a warrantless search and subsequent seizure is *per se* "unreasonable" under the Fourth Amendment unless the factual circumstances of the particular case places it within one of the few specifically established and well delineated exceptions under which a warrant is not required. The burden thus rests upon the government to justify all search and seizures made without a warrant.

The government apparently seeks to justify the search as one made incident to a lawful arrest. The undisputed facts of this case demonstrate that the Kansas City police officers assumed power and deprived all persons inside the car of their liberty of movement by directing them to get out of the car. That assumption of control and deprivation of "liberty of movement" constituted an arrest under the circumstances. See Jackson v. United States, (8 Cir. 1969) 408 F.2d 1165, 1168, and the cases therein cited by Judge, now Mr. Justice, Blackmun.

The issue for determination is whther probable cause for the arrest existed at that time. In United States v. Baines, (W.D.Mo.1974) 373 F.Supp. 821, we discussed the recent Supreme Court cases which articulate the principles of constitutional law applicable to the circumstances under which a warrantless arrest and a warrantless search of an automobile may be justified. Under the factual circumstances stipulated in *Baines*, we concluded that the police officer there involved did in fact have probable cause both to make a warrantless arrest and a subsequent warrantless search of the automobile.[4]

The factual circumstances stipulated in this case are clearly distinguish-

3. There is still another variance between the contemporaneous report of the Kansas City Police Department and the subsequent DEA report in regard to when the occupants were ordered to get out of the car. The Kansas City, Missouri Police Department report stated that "Det. O'Donnell identified himself as a police officer, and instructed Jones not to move the car." The DEA report stated that after "Det. O'Donnell approached the subject vehicle and identified himself as a police officer [he] told JONES *to park the car and to step out.*" Again, the language added by the DEA to the Kansas City, Missouri Police Department report does not add any material factual data which can be said to justify the warrantless arrest and warrantless search and seizure.

4. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) presented similar questions of whether or not the searches there involved were in fact incident to a lawful arrest. In both cases it was conceded by all parties that the police officer had probable cause to arrest, a factual circumstance completely absent under the stipulated factual circumstances of this case.

The government's efforts to stretch the actual holdings of *Robinson* and *Gustafson* were most recently rejected by our controlling Court of Appeals in United States v. Stevens, (8 Cir. 1975) 509 F.2d 683, decided January 22, 1975, but not yet officially reported. That case concluded that "*Robinson* and *Gustafson* did not overrule the established principles of *Preston* [v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777 (1964)] and *Cooper* [v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)], which held, essentially, that for the search of a vehicle to be incident to an arrest, it must have a reasonable nexus to the nature of the offense upon which the arrest is based."

able from those presented in *Baines*. In this case it is undisputed that the only information the police officers had when they went to the airport was the anonymous telephone tip which had been relayed from the Kansas City, Kansas police department to the Kansas City, Missouri police department.[5] Although three, rather than two, people showed up in a 1963 Chevrolet, and although the individual who apparently brought the marihuana from Dallas arrived on Braniff Flight # 146 rather that Braniff Flight # 400, it is clear that the information give by the person who made the anonymous telephone call did lead to the arrest of four persons and the eventual discovery of the marihuana.

That circumstance, however, does not provide probable cause for the arrest of the four individuals and the search of the trunk of the automobile can not be justified as incident to a lawful arrest. For a warrantless arrest and a warrantless search and seizure cannot be justified on the circumstance that the tip proved to be accurate. Defendant's motion properly alleges that the search and seizure was not based on nor was it incident to a lawful arrest. The police officers did not observe anyone violating any law and they did not know whether the anonymous tip was anything more than gossip until, contrary to the protection of the Fourth Amendment, they had opened the suitcase in the trunk of the car and found the marihuana.

The government's attempted reliance upon Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), is misplaced. In Rice v. Wolf, (8 Cir. 1975) 513 F.2d 1280, Judge Matthes concluded that the underlying rationale of *Draper* was "that in certain instances a law enforcement officer may arrest without an arrest warrant if he, rather than a magistrate, has probable cause to believe that a crime is being committed." (At 1287). The police officers involved in this case simply did not have probable cause to arrest the defendants on the basis of an anonymous tip.[6]

The factual circumstances in this case can not be distinguished from Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). In *Whiteley,* as in this case, the state police acted on a tip. An invalid arrest warrant, obtained from a justice of the peace, was based solely on an informer's tip that the defendant and another person had burglarized a hardware store in Saratoga, Wyoming. A statewide pick-up was radioed

5. Whatever happened after the arrest, including the dropping of the plastic bags, can not be properly considered as affording a factual base for probable cause. Even if it could be so considered, it is obvious under the circumstances of this case that there was nothing unlawful about an individual carrying two plastic bags on the premises of the Kansas City Airport. It is also quite clear under the undisputed evidence that defendant Jones could not have obtained whatever may have been in the plastic bags from the baggage which the individual from Dallas brought with him on the airplane. For it is undisputed that the police officers observed all three pieces of baggage being placed in the trunk of the 1963 Chevrolet immediately after they were brought from the airport. And it is undisputed that no police officer knew what was in those suitcases until they opened the trunk of the car.

6. The Court of Appeals in *Rice* appropriately directed attention to Mr. Justice Jackson's observation in Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

and other law enforcement officers in Wyoming were thereby advised that the two suspects would be driving a 1953 or 1954 Buick, light green botton, dark top, with a Wyoming license number, unknown.

A Laramie, Wyoming officer arrested the defendant and his companion and subsequently searched the Buick which the defendant was driving.

Mr. Justice Harlan noted in *Whiteley* that information possessed by the Laramie police officer at the time of arrest and search consisted solely of the information contained in the radio pick-up and that, from his personal observation, there were two men driving a car which matched the car described in the radio bulletin. The arresting officer also personally knew one of the suspects and, from personal observation, could reasonably conclude that defendant Whiteley fitted the description in the radio bulletin. In addition, the arresting officer acquired knowledge after stopping Whiteley that he had given a false name.

Mr. Justice Harlan concluded that under the factual circumstances the record was "devoid of any information at any stage of the proceedings from the time of the burglary to the event of arrest and search that would support either the reliability of the informant or the informant's conclusion that these men were connected with the crime." Applying principles stated in Spinnelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964), the Supreme Court reversed the Court of Appeals for the Tenth Circuit for failing to have determined that the motion to suppress should have been granted.

It is clear that the arresting officer in *Whiteley* had much more information than the arresting officer had in this case. We therefore follow and apply *Whiteley* and the cases relied upon by Mr. Justice Harlan in his opinion in that case.[7]

### III.

The government also attempts to rely upon White v. United States, (8 Cir. 1971), 448 F.2d 250. The question presented in that case was whether or not the factual circumstances were controlled by Whiteley v. Warden, *supra*, or by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *White* involved a tip from a known informant who "had supplied reliable information in two or three prior cases." Although five of eight pieces of information contained in the known informer's tip had been independently verified by the police, the Court of Appeals stated that: "Admittedly at this point there was not probable cause to arrest the man, because the independent verified pieces of information were not of themselves incriminating." The Court of Appeals held in *White* that there was sufficient data to justify a "stop" and, consistent with principles stated in *Terry*, a legitimate ground for arrest developed during the lawful stop. The Court of Appeals therefore held that *White*, on its facts, was distinguishable from *Whiteley* and therefore controlled by *Terry* and principles stated in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The obvious purpose behind the government's reliance on *White* is to take

---

7. Our grant of the motion to suppress in this case is consistent with our Court of Appeals' decisions in Pigg v. United States, (8 Cir. 1964) 337 F.2d 302, in which the trial court's failure to grant a motion to suppress because of the absence of probable cause for the arrest and the resulting seizure of the evidence on which the conviction rested was reversed. See also United States v. Nicholas (8 Cir. 1971) 448 F.2d 622, and United States v. Unverzagt, (8 Cir. 1970) 424 F.2d 396, in which Chief Judge Van Oosterhout concluded, in reliance upon Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, that "uncorroborated accusation by an informant whose identity is unknown and whose reliability has not been established can not constitute probable cause."

advantage of the stipulated circumstances concerning the statement made by Sergeant Doolan that he observed defendant Jones drop two plastic bags to the ground as he obeyed Detective O'Donnell's order to get out of the car. We have already noted that this factual circumstance provides no basis for inferring that the defendants were engaged in unlawful conduct. See footnote 5, *supra*.

Furthermore, we have determined that the police officers' order to get out of the car constituted an "arrest", not a mere "stop." The police officers would never have seen any plastic bags except for the fact the occupants of the car were ordered out of the car. Principles of justification stated in *Terry*, as applied in *White*, therefore are not applicable to this case.

■ The government can not gain any comfort from Mr. Justice Rehnquist's opinion in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). That case was decided on "stop and frisk" principles laid down in *Terry*. Most significantly, in discussing the informant's tip which precipitated the "stop and frisk," the majority opinion in *Adams* stated that: "This is a stronger case than obtains in the case of an anonymous telephone tip." *Adams* further stated that: "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability" and that "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." Certainly, if data is insufficient to justify a "stop and frisk," it would likewise be insufficient to constitute probable cause to justify an arrest. As intimated in *Adams*, an anonymous telephone tip, standing alone, is not sufficient even to justify a stop and frisk, much less an arrest.

Indeed, the facts of this case are more closely analogous to Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), than they are to *Terry, Adams* or *White*. In *Sibron,* the Supreme Court found that a warrantless search of defendant's person for narcotics was not supported by probable cause. Neither could the search be upheld as a self-protective search for weapons under *Terry*. Chief Justice Warren stated the governing principles in regard to a search and seizure:

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. [392 U.S. at 64, 88 S.Ct. at. 1903].

In *Sibron* the only grounds that the police officer had to make a weapons search was his observation of the defendant talking to numerous known narcotics addicts over an eight-hour period. The Supreme Court concluded that this conduct "no more gives rise to reasonable fear of life or limb on the part of the police officer than it justifies an arrest for committing a crime". [Id.] Moreover, even assuming that adequate grounds existed for making a self-protective search for weapons, the police officer's conduct in thrusting his hand into defendant's pocket exceeded the scope of search authorized in *Terry*.

■ The factual data possessed by the officers in this case gave no more indication that the defendants were armed and dangerous than that available to the police officer in *Sibron*. Under the circumstances, the officers did not have the "constitutionally adequate, reasonable grounds" for a "stop and frisk." And it is axiomatic that if reasonable grounds for a stop and frisk did not exist, probable cause for an arrest cannot possibly be present.

For the reasons stated, it is

Ordered that the defendants' motion to suppress should be and the same is hereby granted.