No. 13906

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

JAMES D. JETTY,

Defendant and Respondent.

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles R. Anderson argued, Assistant Attorney General,
Helena, Montana
Jack Yardley argued, County Attorney, Livingston, Montana

For Respondent:

Huppert and Swindlehurst, Livingston, Montana
Joseph T. Swindlehurst argued, Livingston, Montana

Submitted: April 25, 1978

Decided: JUN - 8 1978

Filed: JUN - 8 1978

<span>Thomas J. Kearney</span>
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court, Park County, wherein the court suppressed marijuana seized in a jail search. The state appeals and raises these issues:

1. Whether the search of defendant's person under a warrant of arrest issued by a police magistrate for a parking meter violation is an unreasonable search?

2. Whether the Livingston meter ordinance is constitutional?

On February 6, 1977, at approximately 3:00 a.m., Officer Bryce of the Livingston police department stopped a pickup truck which had no license plate on the rear. While talking to the driver the officer recognized the passenger as a person for whom he had a warrant of arrest for an unpaid parking ticket. Officer Bryce forthwith arrested defendant and advised him he would have to accompany him to the police station to find out the amount of the bail bond.

The driver of the pickup informed Officer Bryce that he would be "following him down with the money." Upon arriving at the police station, the officer ascertained that the bail bond was $15 and defendant reminded him his friend who was driving the truck would bring the bond money to the police station within 20 minutes.

The officer agreed to let defendant wait for his friend in a holding cell. The procedure requires a search for weapons or contraband before being placed in the holding cell. The search consisted of removing defendant's belt and shoes, emptying his pockets and removing his jacket and vest. It was at this time the officer claims he saw a plastic bag sticking out of defendant's shirt. On the other hand, defendant claims that the officer was in the process of stripping him; he took his shirt off and that

is when the illegal drugs were found. Defendant's friend arrived at the police station within 20 minutes with the bond money, but defendant already had been arrested for possession of marijuana.

On March 1, 1977, the District Court held a hearing on a motion to suppress. On March 24, an order suppressing the marijuana found in the search was issued. In its conclusions of law, the court said:

> "I. * * * that the search of the defendant's person upon his arrest for a parking ticket was an unreasonable search. There is no justification for conducting a search consisting of removing articles of clothing and emptying of pockets when the defendant is being detained for a mere parking ticket; and there was no reason to believe he is armed or dangerous, particularly as in the instant case when the defendant was merely being placed in a holding cell and the bond money was expected, and, in fact, arrived momentarily. The constitution prohibits 'unreasonable' searches and not all 'lawful' searches are 'reasonable'; assuming the defendant was lawfully arrested, a reasonable search under the circumstances would have extended to no more that a simple patdown for weapons.

> "II. The Court further holds that the custodial arrest of the defendant upon a parking meter warrant was unlawful because it deprived the defendant due process of law and violated the equal protection clause of the constitution. The defendant was deprived of due process because, conceivably, he did not park the automobile which received the ticket, nor receive the ticket, nor receive notice the ticket was outstanding, yet was subjected to being jailed, a search of his person, and possibility of spending the night in jail. A summons would obviously work as well in ninety-nine percent of the cases."

It is from this order of March 24, 1977, suppressing the evidence that the state appeals.

The state contends that United States v. Robinson, (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L ed 2d 427 and Gustafson v. Florida, (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L ed 2d 456, are controlling in this case. The search of the defendant's person was justified as a search incident to a lawful custodial arrest for a traffic violation. The United States Supreme Court in _Robinson_, affirmed in _Gustafson_, held:

> "* * * The authority to search the person inci-
> dent to a lawful custodial arrest, while based on
> the need to disarm and to discover evidence, does
> not depend on what a court may later decide was
> the probability in a particular arrest situation
> that weapons or evidence would in fact be found
> upon the person of the suspect. * * * It is the
> fact of the lawful arrest which establishes the
> authority to search, and we hold that in the case
> of a lawful custodial arrest, a full search of
> the person is not only an exception to the warrant
> requirement of the Fourth Amendment, but is also
> a 'reasonable' search under that Amendment."
> United States v. Robinson, 38 L ed 2d 440.

The opinion in Robinson further stated that the right to search is not limited if the person was arrested for a traffic offense.

This Court in State ex rel. Kotwicki v. District Court, (1975), 166 Mont. 335, 532 P.2d 694, upheld the search of a person who was stopped on a speeding violation. He was unable to post a $15 appearance bond and was placed under custodial arrest. This Court held that where the custodial arrest was valid, the search of his person was also valid and cited Robinson and Gustafson as authority, but these cases are not controlling in the instant case.

Kotwicki is clearly distinguishable. There the defendant was an out-of-state resident arrested for a moving traffic viola- tion by the state patrol in the nighttime, booked into the county jail and unable to raise any bail. Here, defendant is a local resident, arrested at 3 a.m. for failure to pay an overdue one dollar parking ticket. Defendant's friend advised the officer he would be at the police station with the bail money within 20 minutes. Defendant here was never "booked" as was the defendant in Kotwicki, but merely placed in a holding cell.

The evidence at the suppression hearing did not disclose any basis for a mandatory custodial arrest of the defendant. Here, the officer had knowledge the bail was on its way to the police station via the defendant's friend. The friend did arrive with the bail money, well within the reasonable time defendant was entitled to, to attempt to raise bail. The jail officials

-4-

had no reasonable justification for placing him in a holding cell and subjecting him to a custodial search. The only excuse given was that it was standard procedure at the jail. It was explained that at that time in the morning there was no jailer and the arresting officer had to get back on patrol. Lack of manpower and standard procedure cannot eliminate the individual's constitutional right to be free from unreasonable search and seizure.

Defendant's second issue on appeal becomes academic due to this Court's holding on the first issue. However, because of the wide use of this traffic ordinance throughout the state we feel it necessary to comment on its constitutionality.

The Livingston city code, Section 28-264, provides:

"(a) Every person in whose name a vehicle is registered (licensed) shall be responsible for any parking of such vehicle in violation of this division.

"(b) It shall be no defense to such charge that such vehicle was illegally parked by another, unless it is shown that at such time the vehicle was being used without the consent of the registered (licensed) owner thereof."

The Livingston ordinance is identical to a Seattle, Washington, ordinance which was declared unconstitutional in part by the Washington Supreme Court in City of Seattle v. Stone, (1966), 67 Wash.2d 886, 410 P.2d 583.

We cite City of Seattle v. Stone, supra, with approval and adopt the following rationale:

"The second sentence of the Seattle ordinance [section 28-264(b), Livingston ordinance] preceding the proviso is patently incompatible with the concept of due process. It purports to make a defendant responsible even though he in fact might not have been responsible for the parking violation.

"For the reasons indicated, we are forced to strike down as unconstitutional that portion of the second sentence of §21.66.180 [Livingston ordinance subsection (b)] preceding the proviso, for it deprives an automobile owner of due process of law.

-5-

"We then interpret the remainder of §21.66.180 [Livingston ordinance 28-264, subsection (a)], as do the authorities heretofore cited, to establish only a prima facie responsibility upon the registered owner, which he has the right to rebut, if he can. <u>This in nowise interrupts the city's exercise of its police power or its right and power to enforce its parking ordinances.</u>" (Emphasis added.) 410 P.2d 585. [Bracketed material added.]

As pointed out, the owner is still prima facie liable under the ordinance and subject to arrest and prosecution. However, he <u>cannot</u> be deprived of his defense that some one else he permitted to use his car was the actual violator.

The order and judgment of the District Court are affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices