MR. CHIEF JUSTICE HASWELL
dissenting:
I would refuse to suppress the evidence against the defendant.
The defendant was arrested under a valid warrant. Entry into his house was justified as an incident of that arrest to prevent escape or procuring a weapon. The marijuana and drug paraphernalia were observed in plain view in defendant’s front room. This evidence was later seized under a valid search warrant. There was no unreasonable search and seizure or violation of defendant’s right of privacy.
The majority decision is directly contrary to the latest decision of the United States Supreme Court on the subject. Washington v. Chrisman (1982), U.S. , 102 S.Ct. 812, 70 L.Ed.2d 778. The District Court did not have the benefit of that decision when it suppressed the evidence. The rationale of the District Court was that defendant’s consent to entry into his house was subject to coercive influences invalidating defendant’s waiver of the constitutional prohibition against unreasonable searches and seizures.
The Chrisman court summarized the facts of that case as follows:
“On the evening of January 21, 1978, Officer Daugherty of the Washington State University police department observed Carl Overdahl, a student at the University, leave a student dormitory carrying a half-gallon bottle of gin. Because Washington law forbids possession of alcoholic beverages by persons under 21, Wash.Rev.Code section 66.44.270, and Overdahl appeared to be under age, the officer stopped him and asked for identification. Overdahl said that his identification was in his dormitory room and asked if the officer would *128 wait while he went to retrieve it. The officer answered that under the circumstances he would have to accompany Overdahl, to which Overdahl replied ‘O.K.’
“Overdahl’s room was approximately 11 by 17 feet and located on the 11th floor of the dormitory. Respondent Chrisman, Overdahl’s roommate, was in the room when the officer and Overdahl entered. The officer remained in the open doorway, leaning against the doorjamb while watching Chrisman and Overdahl. He observed that Chrisman, who was in the process of placing a small box in the room’s medicine cabinet, became nervous at the sight of an officer.
“Within 30 to 45 seconds after Overdahl entered the room, the officer noticed seeds and a small pipe lying on a desk 8 to 10 feet from where he was standing. From his training and experience, the officer believed the seeds were marihuana and the pipe was of a type used to smoke marihuana. He entered the room and examined the pipe and seeds, confirming that the seeds were marihuana and observing that the pipe smelled of marihuana.
“The officer informed Overdahl and Chrisman of then-rights under Miranda v. Arizona, 384 U.S. 426 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966); each acknowledged that he understood his rights and indicated that he was willing to waive them. Officer Daugherty then asked whether the students had any other drugs in the room. The respondent handed Daugherty the box he had been carrying earlier, which contained three small plastic bags filled with marihuana and $112 in cash. At that point, Officer Daugherty called by radio for a second officer; on his arrival, the two students were told that a search of the room would be necessary. The officers explained to Overdahl and Chrisman that they had an absolute right to insist that the officer first obtain a search warrant, but that they could voluntarily consent to the search. Following this explanation, which was given in considerable detail, the two students conferred in whispers for several minutes before announcing their consent; they also signed written forms consenting to the search of the room. The search yielded more marihuana and a quantity of lysergic acid diethylamide (LSD), *129 both controlled substances.” Chrisman, supra, 102 S.Ct. at 815, 70 L.Ed.2d at 782-83.
Chrisman was charged with possession of LSD and more than 40 grams of marijuana, both felonies under Washington law. The question facing the Supreme Court on appeal was whether the evidence found by the officer should be suppressed as violating the defendant’s Fourth Amendment rights.
The Supreme Court resolved the issue with this language:
“We hold, therefore, that it is not ‘unreasonable’ under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer’s need to ensure his own safety — as well as the integrity of the arrest — is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested.” Chrisman, supra, 102 S.Ct. at 817, 70 L.Ed.2d at 785.
The Supreme Court further found that since Overdahl had been placed under lawful arrest, the officer was authorized to accompany him to his room to obtain identification and that the officer “. . . had a right to remain literally at Overdahl’s elbow at all times; nothing in the Fourth Amendment is to the contrary.” Chrisman, supra, 102 S.Ct. at 816, 70 L.Ed.2d at 785. The court further found that the officer’s actions were valid as an incident to a lawful arrest.
The facts of the instant case are even more compelling. Here, unlike Chrisman, the officers had a valid arrest warrant and a valid search warrant. They had the right “as a matter of routine, to monitor the movements of [Carlson], as [their] judgment dictates, following the arrest” because of their need to ensure their own safety and the integrity of the arrest. Chrisman, supra. Consent to entry into defendant’s house was unnecessary under Chrisman.
The majority’s attempt to distinguish between an arrest warrant for a misdemeanor and a felony is misplaced. An arrest warrant is no less an arrest warrant because the underlying crime is classified as a misdemeanor. State v. Jetty (1978), 176 Mont. 519, 579 P.2d 1228, relied upon by the majority, in *130 volved a full custodial search in a city jail following an arrest at 3:00 a.m. for failure to pay an overdue $1.00 parking ticket. It is clearly distinguishable on the facts. Any implication therein that an arrest warrant for a misdemeanor stands on a different footing than an arrest for a felony is unwarranted. United States v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. United States Supreme Court decisions interpreting the meaning and application of provisions in the United States Constitution are controlling under the Supremacy Clause of the Constitution and take precedence over any such pronouncement of this Court, Art. Ill, section 2, U.S.Const.
There was no search here within the prohibition against unreasonable searches under the authorities cited by the majority. The officers didn’t enter defendant’s house to search for anything. They didn’t conduct a search but simply observed what was in plain view. Although the officers could have seized the marijuana and drug paraphernalia in plain view at that time Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564], they seized nothing. Instead they applied for and received a valid search warrant and seized the evidence thereunder.
The majority further justify suppression of the evidence under the right of privacy provision in the Montana Constitution:
“Right of privacy. The right of individual privacy is essential to the well being of a free society and shall not be infringed without the showing of a compelling state interest.” Art. II, section 10,1972 Mont.Const.
We have previously held:
“The constitutional guarantee of individual privacy is not absolute. It must be interpreted, construed and applied in the light of other constitutional guarantees and not in isolation. The right of individual privacy must yield to a compelling state interest. Such compelling state interest exists where the state enforces its criminal laws for the benefit and protection of other fundamental rights of its citizens.” State ex rel. *131 Zander v. District Court (1979), Mont., 591 P.2d 656, 660, 36 St.Rep. 489, 494.
The compelling state interest here lies in the enforcement of its laws, misdemeanors as well as felonies. More importantly, it lies in providing protection for its law enforcement officers and protecting the integrity of arrests. The right of privacy was never intended to provide a shield for criminal activity.
The same considerations underlie the right of privacy under the United States Constitution. The fact that the Helena officers obtained access to the defendant’s house for a reason totally unrelated to a search for drugs does not affect the validity of the subsequent drug prosecution. The Chrisman court stated it this way:
“This is a classic instance of incriminating evidence found in plain view when a police officer, for unrelated but entirely legitimate reasons, obtains lawful access to an individual’s area of privacy. The Fourth Amendment does not prohibit seizure of evidence of criminal conduct found in these circumstances.” Chrisman, supra, U.S. at, 102 S.Ct. at 818, 70 L.Ed.2d at 786-87.
Likewise it doesn’t prohibit the conduct of the Helena officers in this case.
Accordingly, I would permit use of the evidence in the criminal proceedings against the defendant.
MR. JUSTICE HARRISON and JUSTICE WEBER concur.