JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion which, in order to sustain defendants’ convictions, ignores Montana statutory law and prior case law, and seriously erodes the right of Montanans to be free from unreasonable warrantless searches of areas where they have a reasonable expectation of privacy.

BACKGROUND

Although the evidence presented to the District Court was in conflict, I support the principle that resolving those conflicts is the province of the District Court, and therefore, the following facts are derived from the testimony of Officer Dennis McCave, and are those which are most favorable to the position of the State.
After McCave and Deputy Sheriff Eugene Johnson arrived at the motel room which was registered to Chris Williams, and in which both Williams and Jason Smith were occupants, they entered without invitation and without permission. Upon gaining entry, McCave observed all that was in sight. He observed a suitcase, clothing, money, and a few personal items, but nothing that was illegal.
*436 Smith was placed under arrest and handcuffed with his arms behind him. He was then seated on a chair near the door while Williams was questioned regarding his identity and his reasons for being in Billings.
McCave and Johnson did not have a search warrant. Neither were they given permission to enter the room. At no time did either defendant act in a threatening manner, and McCave testified he had no probable cause to think there was contraband or fruits of a crime located in the drawers of the motel room. Johnson also testified that the officers had no concern for their safety at any time during the arrest or while present in the defendants’ room.
It is clear from the testimony of all the witnesses that there were no drugs in “plain view” when McCave and Johnson entered the defendants’ room. The drawer in which the drugs were ultimately found was completely closed, and neither McCave nor Johnson were given permission to open the drawer. McCave opened one, and possibly several, drawers in response to Williams’ request for a pen. The fact that the majority could construe such a request as permission to go through the drawers in the defendants’ room, or even worse, conclude that once the drawers were opened without permission, the drugs were in “plain view” is nothing short of preposterous. Any court which would misconstrue the facts to this extent in order to arrive at a conclusion that the Constitution was not violated has no respect for the Fourth Amendment nor Article II, Section 11, of the Montana Constitution.
In arriving at its conclusion that the District Court was correct in denying defendants’ motions to suppress evidence obtained in their motel room, the majority relies on two incorrect conclusions of law. They are addressed separately in the following part of this opinion:

STANDING

First of all, it is clear that the Fourth Amendment protection against unreasonable searches and seizures applies to a guest in a hotel room, as well as the resident of a home. In Stoner v. California (1964), 376 U.S. 483, 490, 84 S. Ct. 889, 893, 11 L. Ed. 2d 856, 861, the U.S. Supreme Court held that:
No less than a tenant of a house, or the occupant of a room in a boarding house, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 [1948,] a guest in a hotel room is entitled to constitutional protection against unreasonable searches and sei *437 zures. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 [1948].
Furthermore, whether the motel room was registered in Williams’ name or Smith’s name is irrelevant. The United States Supreme Court has repeatedly made clear that the right to be free from unreasonable warrantless searches does not depend on an occupant’s proprietary interest in the area that is to be searched. In Rakas v. Illinois (1978), 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387, 401-02, the Supreme Court reaffirmed that:
Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), provides guidance in defining the scope of the interest protected by the Fourth Amendment. In the course of repudiating the doctrine derived from Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), and Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), that if police officers had not been guilty of a common-law trespass they were not prohibited by the Fourth Amendment from eavesdropping, the Court in Katz held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. 389 U.S. at 353, [88 S.Ct. at 512]; see United States v. Chadwick, 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); United States v. White, 401 U.S. 745, 752, 91 S.Ct. 1122, [1126], 28 L.Ed.2d 453 (1971). Viewed in this manner, the holding in Jones can best be explained by the fact that Jones had a legitimate expectation of privacy in the premises he was using and therefore could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises, even though his “interest” in those premises might not have been a recognized property interest at common law. See Jones v. United States, 362 U.S. at 261, [80 S.Ct. 725, 730, 4 L.Ed.2d 697 (1960)].
For the reasons set forth in Katz and Rakas, the Supreme Court recently held in Minnesota v. Olson (1990), 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85, that an overnight guest in another’s home had a sufficient expectation of privacy in that home to invoke the Fourth Amendment protection against unreasonable searches and seizures. In language relevant to this case, the Court stated that:
It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a *438 friend. Society expects at least as much privacy in these places as in a telephone booth — “a temporarily private place whose momentary occupants’ expectations of freedom from intrusion are recognized as reasonable.” Katz, 389 U.S. at 361, 88 S.Ct. at 517 (Harlan, J., concurring).
Olson, 495 U.S. at 99, 110 S.Ct. at 1689.
The only difference between the situation of the accused in Olson and Smith in this case, was that Smith was not an “overnight” guest. However, he was still a guest in the private, even though temporary, quarters of another, and as such had, by our society’s standards, a reasonable expectation of privacy and freedom from governmental intrusion while present at that location.
As pointed out in the Olson decision, Smith, in this case, had at least as much expectation of privacy while behind the closed door of a companion’s room as Katz had while talking on the telephone in a glass telephone booth.
The majority concludes that the critical distinction between this case and Olson is that the defendant in that case was an “overnight” guest, rather than a day time guest. However, I can think of no rational basis for concluding that a person’s expectation of privacy depends on the length of time during which he is a guest in another’s home, or the time of day during which he is present in another’s home or motel room. The majority opinion simply substitutes an arbitrary and irrelevant criterion for the real test from the Rakas decision which is whether an expectation of privacy under these circumstances is reasonable in light of “understandings that are recognized and permitted by society.” Rakas, 439 U.S. at 144 n.12, 99 S.Ct. at 431 n.12.
For these reasons, I dissent from that part of the majority opinion which concludes that Bryan Earl Smith did not have standing to move to suppress the evidence seized from Room 122 of the Rimview Inn in Billings on October 11, 1992.

PLAIN VIEW DOCTRINE

McCave and Johnson had no search warrant which authorized them to search the room occupied by Williams and Smith. They did have a warrant for Smith’s arrest, even though they did not bring it with them to the room when he was arrested. Section 46-5-102, MCA, sets forth the circumstances under which a search will be permitted pursuant to a lawful arrest. That section provides that:
*439 When a lawful arrest is effected, a peace officer may reasonably search the person arrested and the area within such person’s immediate presence for the purpose of:
(1) protecting the officer from attack;
(2) preventing the person from escaping;
(3) discovering and seizing the fruits of the crime; or
(4) discovering and seizing any persons, instruments, articles, or things which have been used in the commission of or which may constitute evidence of the offense.
The first circumstance does not apply because both officers testified that they were not concerned about attack from either Williams or Smith. Smith, in fact, had already been arrested, handcuffed, and was seated on a chair near the door. Obviously, the second circumstance does not apply because going through the drawers in the room had nothing to do with preventing Smith’s escape. Finally, neither the third nor fourth circumstances apply because the crime for which Smith had been arrested involved a previous drug transaction and no one testified that there was any reason to suspect that evidence of that crime was present in the motel room when McCave started opening drawers.
The majority incredibly concludes that even though these two law officers had no search warrant nor any permission to search the defendants’ room, and even though the search was not pursuant to arrest as provided for by statute, the officers had authority to search the area where drugs were found under the “plain view” doctrine. The majority’s conclusion is erroneous for several reasons. First of all, the conclusion that the officers were in the defendants’ room legally in the first place is premised on the U.S. Supreme Court’s decision in Washington v. Chrisman (1982), 455 U.S. 1, 102 S. Ct. 812, 70 L. Ed. 2d 778. The majority opinion fails to note that we declined to follow Chrisman under similar circumstances in State v. Carlson (1982), 198 Mont. 113, 644 P.2d 498. Furthermore, even if the officers were legitimately in the motel room, the drugs ultimately discovered were not in “plain view” in that room and were not discovered until one of the officers started going through drawers which they had no prior permission to open. The fact that one of the occupants asked one of the officers to borrow his pen was not a request to rummage through the motel room drawers looking for another pen, and did not satisfy the requirement from Coolidge v. New Hampshire (1971), 403 U.S. 443, 467, 91 S. Ct. 2022, 2038, 29 L. Ed. 2d 564, 583, that there be *440 prior justification for intrusion in the area where the evidence is found. Presence in the defendants’ room did not place the contents of the defendants’ drawers in “plain view” for purposes of establishing an exception to the requirement that searches be conducted pursuant to a search warrant.
In Carlson, Helena City Police Officers came to the defendant’s home to serve misdemeanor arrest warrants. The defendant appeared at the door, where he was advised that he was under arrest. However, he, like Smith in this case, requested the opportunity to complete dressing, and therefore, the officers accompanied him into his home while he did so. They were never told that they could not enter, and were never given specific permission to enter.
Once inside the home, the officers in Carlson observed drugs and drug paraphernalia which was in plain view on a coffee table in the living room. They did not seize the evidence but, like the officers in this case, used the observation to obtain a warrant with which they later returned and searched the defendant’s home.
The defendant moved to suppress the evidence seized in his home, and the State opposed the motion, based on the “plain view” doctrine.
After acknowledging the “plain view” doctrine, this Court held that:
If therefore, the officers in this case were lawfully in Carlson’s front room when they made the visual observations, a “search” within the constitutional sense did not occur; on the other hand, if their presence in the front room was not consented to, as the District Court determined, the visual examination does constitute a “search” in the constitutional sense.
The validity of the officers’ entry into Carlson’s front room is the fulcrum therefore on which this case turns.
Carlson, 644 P.2d at 501.
This Court concluded that under these circumstances valid consent had not been given because:
In order to show that voluntary consent to search was obtained, the State must show that the consent was unequivocal, specific, intelligently given and uncontaminated by duress or coercion. This Court has held that there is a heavy burden of proof required to show that there was consent to a search. State v. LaFlamme (1976), 177 [170] Mont. 202, 204, 551 P.2d 1011, 1012. Equivocal conduct alone is insufficient as a basis for inference of consent to a search, *441 which consent is a waiver of a constitutional right. [Citations omitted].
Carlson, 644 P.2d at 502.
Based on this standard, there can hardly be any intellectually honest argument that either Williams or Smith consented to have their drawers searched in their motel room by requesting a pen from Officer Johnson.
The majority bases its conclusion on Coolidge and Chrisman. However, both cases were considered in Carlson and rejected as a basis for entrance into the defendant’s home. Regarding Coolidge, we stated that:
The high court noted in Coolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583, that what the “plain view” cases had in common was that the police officer in each case had a prior justification for an invasion into the property of the accused. The District Court noted this distinction and decided that in this case there was no prior justification for the intrusion. ...
We agree with the District Court. There was no prior justification or exigency for the entry by the police officers in this case. Their entry under the facts of this case was unreasonable, and it is that factor that converted their observation while in the house into a warrantless search, which is always presumed unreasonable. E.g., Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.
Carlson, 644 P.2d at 504.
We also specifically addressed the applicability of Chrisman to these circumstances. We stated that:
We are aware of Washington v. Chrisman (1982), [455] U.S. [1], 102 S.Ct. 812, 70 L.Ed.2d 778, in which the high court upheld the seizure of marijuana seeds and a pipe where a Washington State University policeman had entered the room to allow an arrested person to procure identification. Chrisman was the roommate of the arrested person. ... We distinguish this case however. The District Court in this case found that the entry of the police to the defendant’s home occurred through the defendant’s coerced consent. We have previously held that full custodial arrest and mandatory search for a minor traffic violation is unreasonable. State v. Jetty [(1978), 176 Mont. 519, 579 P.2d 1228]. We have, moreover, *442 our unique state constitutional provision which defends the right of individual privacy absent a showing of compelling state interest. Art. II, § 10, 1972 Mont. Const. A compelling state interest is lacking here to overcome defendant’s reasonable expectation of privacy in his home.
Carlson, 644 P.2d at 504.
The facts in this case are even more offensive to the right to be free from unreasonable searches than the facts in Carlson. In this case, not only did the officers enter the defendants’ motel room without permission and without a warrant, but the evidence ultimately seized was not even in “plain view” once they arrived in the motel room. It was only discovered after the defendants’privacy was further invaded by opening drawers in that room without their permission. The fact that one of the defendants asked for a pen did not justify going through the defendants’ drawers, it was merely a pretext for a search which was constitutionally prohibited.
The majority attempts to distinguish this case from Carlson based on the fact that these defendants were arrested for an alleged felony and the defendant in Carlson was arrested for an alleged misdemeanor. According to the majority, Carlson was overruled by our decision in State v. Wood (1983), 205 Mont. 141, 666 P.2d 753. However, the majority opinion misconstrues the basis for our decision in Carlson and exaggerates the extent to which it was modified by Wood.
In Carlson, we discussed two issues: (1) whether the defendant had freely consented to the entry of police into Ms home or whether entry was subtly coerced; and (2) whether custodial arrest is ever appropriate for a misdemeanor.
In Wood, we merely concluded that the proMbition against custodial arrest for a misdemeanor did not apply to felomes. In that case, there was no discussion about the circumstances under wMch an arrest warrant could serve as a pretext for entering someone’s home or private quarters. Neither did we reconsider our prior determination that the uMque guarantee of privacy in the State of Montana required a greater showing than was reqmred in Chrisman for entry into a person’s home or room. Wood simply has no applicability to tMs case.
The majority’s analysis ends with its conclusion that the arresting officers lawfully entered the defendants’ room, and then as an afterthought, concludes that the defendants did not prove that ‘looking for a pen was a ‘pretext’ for opening the desk drawer.” However, the majority has it backwards. The defendants did not have to prove anything. Since the State did not have a warrant wMch authorized *443 it to go through the defendants’ drawers, it had to prove that its officers had permission, or some other justification for doing so, and there was a total failure of such proof. The majority does not even bother to address this issue, but simply concludes that it was sufficient that one of the defendants asked one of the officers (not the one who conducted the search) for a pen.
We have come a long way from the days when the State had the burden to show that “consent was unequivocal, and intelligently given.” Unfortunately, this progress has been at the expense of the Constitution and sound judicial reasoning.
The majority’s willingness to distort the law to justify a search under these circumstances may, in the short term, punish a couple more small-time drug dealers, but the benefit does not justify the long-term detriment that has been done to the right of all citizens to be free from unreasonable and warrantless government searches. This decision is just one more step toward the erosion of the right to privacy guaranteed to all Montanans and one with which I cannot concur.
For these reasons, I dissent from the majority’s conclusion that the evidence seized from the motel room occupied by defendants Williams and Smith was acceptable under the “plain view” doctrine. I would reverse the order of the District Court.
JUSTICE HUNT joins in the foregoing dissent.